UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLIE ANN BUTLER

                    Plaintiff,                                    Case No.

vs

LINDA EDWARDS-BROWN and DANIEL B. DWYER, in their individual
and official capacities,

                    Defendants.
_____/

Hugh M. Davis (P12555)                      Robert D. Horvath (P27633)
Cynthia Heenan (P53664)                     Co-counsel for Plaintiff
Constitutional Litigation Associates, P.C.  2833 Crooks Road, Suite 104
450 W. Fort Street, Suite 200               Troy, MI  48084
Detroit, MI  48226                          (248) 614-4770; fax (248) 822-3174
(313) 961-2255; fax (313) 961-5999          Rdhjdlo@aol.com
conlitpc@sbcglobal.net
_____/

VERIFIED COMPLAINT & JURY DEMAND

        Plaintiff states:

Jurisdiction and Parties

1.       The jurisdiction of the court over this case arises under 28 USC §§ 1331,

1343(3), 2201, & 2202.  This is a proceeding pursuant to 42 USC § 1983 to redress the

violation of rights and liberties guaranteed to Plaintiff' by the Fourteenth and Fourth

Amendments to the Constitution of the United States. Venue is properly laid in the Eastern

District of Michigan, per 28 USC §1391(a)(1) & (2), since the events giving rise to the claim

occurred in Washtenaw County, Michigan and the Defendants are located there.

2.       Plaintiff Leslie Ann Butler is a resident of, and practicing attorney in

Washtenaw County, Michigan. This lawsuit addresses ad hoc disciplinary actions taken

1

against her because of statements she made as a private citizen that were perceived as being critical of certain administrative functions of the Washtenaw County Probate Court (efficiency of the clerk's office), discipline that resulted in her unilateral removal from that court's attorney assignment list ("List"), which thus barred her from assignments she otherwise was eligible to receive. The defendants – by virtue of an unwritten, standardless, and subjective practice of informal discipline that is a de facto policy of the court -- have thus conditioned Plaintiff's placement on the list on the exercise of her First Amendment rights, which in itself is a violation of the unconstitutional conditions doctrine. G & V Lounge v Michigan Liquor Control Commission, 23 F3d 1071, 1077 (6th Cir. 1994) and Agency for International Development v Alliance for Open Society Int'l, Inc., 570 US __ (June 20, 2013).[1] In short, the defendants, as officials of the court, have an unconstitutional policy[2] of attorney-censorship by which they monitor and punish the First Amendment protected expressions of citizens who practice in their court.

_____

[1]   Government "may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech even if he has no entitlement to that benefit." Id., Slip opinion p 8

[2]   Id., Slip Opinion, p 14: " If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." Citing West Virginia Bd. of Education v Barnette, 319 US 624, 642 (1943).

3.      Defendant LINDA EDWARDS-BROWN is an administrator for the Washtenaw County Juvenile and Probate Court. She is sued in her individual capacity and in her official capacity. She acted under color of law at all times pertinent to this complaint. Defendant Edwards-Brown effected and announced Plaintiff's removal from the List.

4.      Defendant DANIEL B. DWYER is court administrator for the Washtenaw County Trial Court. He is sued in his individual capacity and in his official capacity. He acted under color of law at all times pertinent to this complaint. Defendant Dwyer reviewed and ratified Defendant Edwards-Brown decision to remove Plaintiff from the List.

5.      Plaintiff seeks compensatory and punitive damages from the defendants for the harm to her professional standing, for the loss of work, for the public humiliation/embarrassment from being labeled unprofessional and the example made of her, and for the harm to her constitutional rights. She also seeks declaratory and injunctive relief against the defendants in their official capacities so as to preclude similar actions by them in the future; the defendants' actions have chilled Plaintiff's First Amendment rights, and the rights of others.

<u>General Allegations</u>

6.      Plaintiff is a member of the Michigan Bar and has been an attorney in good standing from November 14, 2008, the date she was admitted to practice, to the present. She graduated from the University of Michigan in 2003, receiving a Bachelor of Science degree in History, graduating With Distinction, and went on to obtain her Juris Doctorate from Wayne State University Law School in 2008.

3

7.    As a member in good standing of the Michigan State Bar, her licensing status is valuable property and a liberty interest, particularly as licensing signifies "... a continuing proclamation by the [Michigan] Supreme Court  that the holder is fit to be entrusted with professional and judicial matters and to aid in the administration of justice as an attorney and counselor and as an officer of the court." See MCR 9.103(A).

8.    In this regard and notably, attorneys act as "critical buffers" between the individual and the power of the state. Johnson v City of Cincinnati, 310 F3d 484, 498 (6th Cir. 2002).  In addition, the interchange of ideas being vital to self-government, attorneys are positioned to offer the most apt criticism of government. Berry v Schmitt, 688 F3d 290, 291 (6th Cir. 2012). And the core principle of democracy for all, being black-letter First Amendment law for over 70 years, is that the government cannot compel its citizens to express political or other views. West Virginia Bd. of Education v Barnette, 319 US 624 (1943) and Wooley v Maynard, 430 US 705 (1977).

9.    Plaintiff practices law primarily in Washtenaw County. Wanting to receive assignments form the local probate court, in 2009 she attended the court's requisite seminar/orientation as a condition for appointments. Consequently, she was placed on the assignment list, and thereafter she received appointments, which she carried out satisfactorily.

10.    In April 2012, Plaintiff made a comment about the Probate Court clerk's performance, which implicated administrative competence of that office.[3] She posted this comment on Facebook on April 4, 2012 and it was tagged for notice to Erin and Katherine

4

Streeter, who were acquaintances of Plaintiff as well as personnel of the trial court. (The probate and circuit court had merged administratively, and juvenile court administration merged with the probate court, hence defendant Edwards-Brown's function as combined juvenile and probate court administrator,[4] with defendant Dwyer being chief administrator overall.)

11.     Within a few days, she received a letter dated April 17, 2012 from defendant Edwards-Brown advising Plaintiff that the defendant had removed her from the List because she found the comments to be unsatisfactory, labeling them as "denigrating" the court. (This removal letter was issued in her capacity as Juvenile and Probate Court Administrator and read, as pertinent: "In light of your recent Facebook post denigrating the Washtenaw County Probate Court, you have been removed from the Washtenaw County Probate Court attorney appointment list.")

12.     Plaintiff unsuccessfully sought relief from defendant Edwards-Brown's announced decision, eventually receiving a letter from defendant Dwyer, dated July 16,

---

[3]     Plaintiff's comments were innocuous as they very briefly described two actions of the probate clerk's office in an estate she was handling: processing a letter of authority and issuing a reminder notice for upcoming action; she followed those comments with an observation that suggested the clerk's office was "turning over a new leaf" which was a statement of opinion based on the circumstances recited.

[4]     That merger entailed some difficulties or glitches, which was the subject of public discussion by bench and bar. Defendant Edwards-Brown had been the administrator for the juvenile court, but took over responsibilities for the probate court after the merger, sometime in or after 2010.

2012, as chief administrator of the court (and acting for the chief judge in the specific circumstance), that he found no reason to overturn defendant Edwards-Brown's decision. Indeed, during their brief meeting on July 13, 2012 he had observed that Plaintiff should not have made such comments, and doing so was unprofessional – even though he said he had not seen the actual remarks of Plaintiff.

13.    In the meantime, Plaintiff had attended a meeting of the local bar in May 2012 where her removal was mentioned, to one or more of the attendees, by Theresa Killleen of probate Judge O'Brien's staff. (Unprofessional attorney who got removed from the List due to opinion about the clerk's office, thus unfit to represent the court.) The chief judge (Hon. Donald Shelton) in his presentation at the meeting noted the challenges to the court arising from the merger. This May 2012 local bar meeting followed one on April 10, 2012 (just days after Plaintiff's comments) where probate Judge O'Brien addressed the judicious use of social media and the challenges faced by the clerk's office. Plaintiff's comments, the consequences to her and the court's concern about public criticism of court-operations are quite evident in these circumstances. But government's mere interest in avoiding or curtailing criticism is not legitimate under the First Amendment.

14.    Thinking that the passage of time would cure the removal, Plaintiff again attended the seminar/orientation for appointments in the latter part of 2012 to demonstrate her eligibility for appointments. However, defendant Edwards-Brown told Plaintiff (e-mail of December 13, 2012) that she remained ineligible. ("I have removed you from the list at this time.")

15.    Although members of the Michigan State Bar have "civility and courtesy" obligations under Rules promulgated and interpreted by the Michigan Supreme Court (see

6

generally Michigan Rules of Professional Conduct, chapters 3, 6 and 8; MRPC 3.1 - 3.9, 8.1 - 8.5, and 6.5),  Plaintiff has not violated those Rules and, of course, has neither faced nor received any formal discipline. Indeed, lawyers have a well-known penchant for openly discussing their experiences in various courthouses, including clerical functions therein, and if lawyers could be disciplined for perceived gripes about court operations there would not be an un-disciplined lawyer in the State of Michigan. Whether she applauded court operations, suggested a need for correction or comparatively judged or criticized past or current operations, Plaintiff's grounded opinion of court functions cannot serve as any basis for punishment.

16.     Nonetheless, the defendants by their unilateral action for the local court employed a subjective and standardless disciplinary "code" that contravenes the formal Michigan disciplinary Rules and violates the First Amendment. By way of example see, In re Chmura, 464 Mich 58, 71-72, 626 NW2d 876 (2001)(discipline cannot be imposed unless authorities meet exacting New York Times standard and opinion about public affairs is not sanctionable); and Grievance Adm'r v Fieger, 476 Mich 231, 719 NW2d 123 (2006)(disciplinary rules are not aimed at prohibiting criticism or for censorship; rather, in that matter, attorney sanctioned for highly vulgar personal remarks against jurists in a pending case). See also Fieger v Corrigan,553 F3d 955 (6th Cir. 2009).

17.     The defendants' ad hoc, standardless and subjective, disciplinary  action violated procedural due process, (see by normative comparison MCR 9.101 et seq – "Professional Disciplinary Procedure") as they have harmed Plaintiff's standing in her professional license, in addition to injuring her First Amendment rights.

7

18.     Further and as noted above, the defendants' unwritten, de facto, policy violates the "void for vagueness" doctrine[5] as such imprecise and subjective practices create the danger of having a chilling effect on speech. <u>Ass'n of Cleveland Fire Fighters v City of Cleveland</u>, 502 F3d 545, 551 (6th Cir. 2007).[6] See also <u>McGlone v Cheek</u>, Sixth Circuit Case No. 12-5306, August 2, 2013, Slip Opinion, p 9.[7]

## <u>Constitutional Claims</u> – Count I: unconstitutional condition

19.     The prior paragraphs are incorporated by reference.

20.     Inasmuch as the defendants have conditioned Plaintiff's placement on the List on her exercise of constitutional rights, their actions are unlawful. <u>RSWW, Inc. v Keego</u>

_____

[5]     "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." <u>Grayned v City of Rockford</u>, 408 US 104, 108 (1972)

[6]     "We have recognized that the vagueness doctrine has two primary goals: (1) to ensure fair notice to the citizenry and (2) to provide standards for enforcement [by officials]. With respect to the first goal, the Supreme Court has stated that "[a] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." <u>Connally v Gen. Constr. Co.</u>, 269 US 385, 391 (1925). With respect to the second goal, the Supreme Court stated that "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to [officials] for resolution on an ad hoc and subjective basis." (emphasis supplied)

[7]     "[V]ague laws create the danger of having a chilling effect on speech. In <u>Grayned</u>, the Supreme Court warned that '[u]ncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked.' <u>Grayned</u>, 408 US at 109 (quoting <u>Baggett v Bullitt,</u> 377 US 360, 372 (1964) (citation omitted)); see also <u>Scull v Commonwealth of Va. ex. rel. Comm. on Law Reform and Racial Activities,</u> 359 US 344, 353 (1959) ('Certainty is all the more essential when vagueness might induce individuals to forego their rights of speech, press, and association for fear of violating an unclear law.')."

Harbor, 397 F3d 427 (2005), relying on Perry v Sindermann, 408 US 593, 597 (1972).[8] She is entitled to damages from them in their individual capacities for their past actions and she is entitled to declaratory and injunctive relief for this de facto unconstitutional, ongoing, policy in their official capacities for the court.

21.     The defendants do not have qualified immunity for their actions and resulting harm to Plaintiff in their individual capacities since it was well-established that such misconduct violated the law. Pucci v Nineteenth District Court, 628 F3d 752 (6th Cir. 2010) And they may be sued for prospective relief in their official capacities regarding the ongoing policy of the court under Ex parte Young, 209 US 123 (1908); see Dubuc v Googasian, 342 F3d 610 (6th Cir. 2003) and Pucci v Nineteenth District Court, supra.

## Constitutional Claims – Count II: retaliation for freedom of speech

22.     The prior paragraphs are incorporated by reference.

23.      The defendants assessed Plaintiff's expressive activities and used them to deny her placement on the List. Thus, this was punishment for protected speech and constitutes unlawful retaliation. She is entitled to damages from them in their individual capacities for their actions.

24.     The defendants do not have qualified immunity for their actions and resulting harm to Plaintiff in their individual capacities since it was well-established that such misconduct violated the law. Pucci v Nineteenth District Court, supra.

---

[8]     "For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests ...."

9

## <u>Constitutional Claims</u> – Count  III: due process

(Plaintiff did not receive Procedural Due Process and
the de facto, unwritten, ad hoc and subjective, standards used are overly broad
& violate the Void-for-Vagueness doctrine)

25.    The prior paragraphs are incorporated by reference.

26.    If the defendants had a formal disciplinary process with nominal standards for imposing discipline as they did to Plaintiff, such a process would be overly broad under the First Amendment. See <u>Berry v Schmitt,</u> 688 F3d 290 (6th Cir. 2012). In addition, Michigan law affords protections to Michigan lawyers for their expressive activities under rigorous standards, apart from the explicit provisions in the rules; see <u>In re Chmura</u>, supra, <u>Grievance Adm'r v Fieger,</u> supra, and <u>Fieger v Corrigan</u>, supra.

27.    But in this case, the defendants acted under an informal, de facto, process. Doing so violated procedural due process protections for lawyers since Michigan law is clear that a lawyer may not be disciplined without adherence to established disciplinary process; see Chapter 9 of the Michigan Court Rules, MCR 9.100 et seq (Professional Disciplinary Procedure)[9] In addition, such a "code" is overly broad and violates the First Amendment, as noted.

28.    Inasmuch as the defendants unilaterally, without any standards and on an ex parte basis, disciplined and removed Plaintiff from the List, their actions are unlawful, particularly as the practices they employed violated the void-for-vagueness-doctrine.

_____

[9]    Michigan law in this context thus creates a property and/or liberty interest in an attorney's professional standing, which may not be abridged without proper procedure. There is also a more generalized liberty to pursue one's chosen profession, which is protected under the Due Process Clause of the Fourteenth Amendment. See <u>Parate v Isibor</u>, 868 F2d 821 (6th Cir. 1989), <u>Wilkerson v Johnson</u>, 699 F2d 235, 326 (6th Cir. 1983) and <u>Sanderson v Village of Greenhills,</u> 726 F2d 284 (6th Cir. 1984)

29.     Plaintiff is entitled to damages from the defendants in their individual capacities for their past actions and she is entitled to declaratory and/or injunctive relief for this ongoing, de facto, unconstitutional policy in their official capacities for the court.

30.     The defendants do not have qualified immunity for their actions and resulting harm to Plaintiff in their individual capacities since it was well-established that such misconduct violated the law

WHEREFORE, Plaintiff prays this Court grant the following relief:

(A)     That upon a trial on the merits, it enter judgment in Plaintiff's favor against the Defendants in an amount that affords full and fair compensation for all damages suffered by Plaintiff' as a matter of federal law.

(B)     That upon a trial on the merits, it award punitive damages to Plaintiff against the Defendants, as the circumstances warrant.

(C)     That it conduct a jury trial to assess liability and damages.

(D)     That it award Plaintiff declaratory and/or injunctive relief, including but not limited to an order mandating her restoration to the attorney assignment list.

(E)     That it award Plaintiff damages and costs, including reasonable attorney fees, pursuant to 42 USC § 1988 and grant any other relief to which Plaintiff may be entitled.

_    s/Hugh M. Davis  (P12555)_
Constitutional Litigation Associates, P.C.
450 W. Fort St., Ste. 200
Detroit, MI 48226
313-961-2255/Fax: 313-961-5999
Dated: 8/30/13                    conlitpc@sbcglobal.net

11

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLIE ANN BUTLER

                Plaintiff,                        Case No.

vs

LINDA EDWARDS-BROWN and DANIEL B. DWYER, in their individual
and official capacities,

                Defendants.

_____/

| | |
|---|---|
| Hugh M. Davis (P12555) | Robert D. Horvath (P27633) |
| Cynthia Heenan (P53664) | Co-counsel for Plaintiff |
| Constitutional Litigation Associates, P.C. | 2833 Crooks Road, Suite 104 |
| 450 W. Fort Street, Suite 200 | Troy, MI  48084 |
| Detroit, MI  48226 | (248) 614-4770; fax (248) 822-3174 |
| (313) 961-2255; fax (313) 961-5999 | Rdhjdlo@aol.com |
| conlitpc@sbcglobal.net | |

_____/

**Jury Demand**

    Plaintiff, Leslie Butler requests a trial by jury.

                            _s/Hugh M. Davis_  (P12555)
                            Constitutional Litigation Associates, P.C.
                            450 W. Fort St., Ste. 200
                            Detroit, MI 48226
                            313-961-2255/Fax: 313-961-5999
Dated: 8/30/13                  conlitpc@sbcglobal.net

F:\Cases\Butler, Leslie\Pldgs\Complaint and Jury Demand - Final From RDH (8-22-13).docx

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLIE ANN BUTLER

               Plaintiff,                    Case No.

vs

LINDA EDWARDS-BROWN and DANIEL B. DWYER, in their individual
and official capacities,

               Defendants.

                                               /

| | |
|---|---|
| Hugh M. Davis (P12555)<br>Cynthia Heenan (P53664)<br>Constitutional Litigation Associates, P.C.<br>450 W. Fort Street, Suite 200<br>Detroit, MI 48226<br>(313) 961-2255; fax (313) 961-5999<br>conlitpc@sbcglobal.net | Robert D. Horvath (P27633)<br>Co-counsel for Plaintiff<br>2833 Crooks Road, Suite 104<br>Troy, MI 48084<br>(248) 614-4770; fax (248) 822-3174<br>Rdhjdlo@aol.com |

                                             /

### VERIFICATION OF LESLIE BUTLER

I, Leslie Butler declare as follows:

1.      I am the Plaintiff;

2.      I have personal information of the facts stated in the verified complaint, if called upon to testify I would competently testify as to the matters stated herein.

3.      I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint are true and correct.

Leslie Butler

Dated: 8/28/13

13