UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Leslie Ann Butler,

    Plaintiff,

v.

Linda Edwards-Brown and Daniel B. Dwyer,
in their individual and official capacities,

    Defendants.
_____/

Case No. 13-13738

Honorable Nancy G. Edmunds

## ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION [2]

Currently before the Court is Plaintiff Leslie Ann Butler's motion for a preliminary injunction. Plaintiff alleges infringement of her First Amendment rights by Defendants Linda Edwards-Brown and Daniel B. Dwyer. For the reasons set forth below, the Court DENIES Plaintiff's motion.

**I.  FACTS**

Many of the essential facts in this case are not in dispute. Plaintiff is an attorney licensed to practice in Michigan. Compl. ¶ 2. In 2009 Plaintiff satisfied the eligibility requirements set forth by the Washtenaw County Probate Court in order to receive assignments from that court. Compl. ¶ 9. Plaintiff was placed on the assignment list and received several assignments, which she carried out satisfactorily. *Id.*

In April 2012, Plaintiff made a comment on Facebook[1] about the performance of the Clerk's Office at the Washtenaw Probate Court, specifically with regard to a case she was handling. Compl. ¶ 10. Plaintiff "tagged" two people with whom she had a pre-existing,

---

[1] Facebook is a social media website where members post comments, pictures, etc.

personal relationship, mistakenly identifying them as Clerk's Office employees in her Facebook post, and identifying them by name. *Id.* Plaintiff testified that she believes her Facebook profile is set to only be visible to "friends" as opposed to the general public.[2] Butler Dep. 72:3-7, December 3, 2013. In a matter of days, Plaintiff received a letter from Defendant Edwards-Brown, the administrator of the Washtenaw Juvenile and Probate Courts. Compl. ¶ 11. That letter stated that Plaintiff had been removed from the assignment list because of her comment on Facebook. *Id.*

In July 2012, Plaintiff sought to be reinstated to the list in a meeting with Defendant Dwyer, the Chief Administrator of the Washtenaw Trial Court. Compl. ¶ 12. Defendant Dwyer refused to reinstate Plaintiff. *Id.*

In December 2012, Plaintiff attempted to demonstrate her eligibility for placement on the list by attending the required seminar, but was told via email by Defendant Edwards-Brown that she remained ineligible for the list, but that she could reapply for placement on the list in the future. J. Ex. 15. Specifically, Plaintiff was told in July 2012 by letter that she could reapply in January 2013. J. Ex. 14. To date, Plaintiff has not reapplied to the list. Butler Dep. 114:9-115:2.

There is no written policy for removal from the list. Edwards-Brown Dep. 57:20-22. December 3, 2013. It is within Defendant Edwards-Brown's authority to remove people from the list. Dwyer Dep. 21:22-25, December 3, 2013. Neither Defendant actually saw the Facebook post in question. Edwards-Brown Dep. 22:24-23:17; Dwyer Dep. 8:3-16. Instead,

---

[2]Depending on an individual member's privacy settings, a posted comment may be visible to the general public, a single individual selected by the member, or a variety of sizes of target audiences between those two extremes.

the post was brought to Defendant Edwards-Brown's attention by one of the court employees who was tagged in the post, Katherine Streeter. Edwards-Brown Dep. 22:9-11. Defendants took Ms. Streeter at her word regarding the content of the post.[3] Edwards-Brown Dep. 37:18-19; Dwyer Dep. 9:25-11:8.

Plaintiff was not subject to any formal disciplinary action under the Michigan Rules of Professional Conduct. Compl. ¶ 15.

Plaintiff initiated this lawsuit on September 3, 2013, and simultaneously filed the instant motion for a preliminary injunction, demanding that she be reinstated to the list.

## II.     ANALYSIS

### A. The Standard on a Motion for a Preliminary Injunction

In the Sixth Circuit it is firmly established that federal district courts balance the following factors in addressing a motion for a preliminary injunction:

> (1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest will be advanced by issuing the injunction.

*Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010). Furthermore, "[n]one of these factors, standing alone, is a prerequisite to relief; rather, the court should balance them." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

---

[3]Plaintiff makes much of the fact that Ms. Streeter has many family members working at the courthouse, including her mother, who is the assistant to the Chief Judge. While she does not come out and say it, nor has she presented any evidence in support of it, Plaintiff seems to be implying some court-wide system of favoritism. There is nothing in the record to support such an implication, and the Court will not consider such allegations in making its determination on the instant motion.

When the First Amendment is invoked, the analysis focuses on the "likelihood of success on the merits" prong, because that prong is often determinative. *Jones v. Hamilton Cnty. Gov't, Tenn.*, 530 F. App'x 478 (6th Cir. 2013). The "success on the merits" prong is so important in First Amendment cases because the other prongs tend to fall in line if it is established that a constitutional violation likely occurred. For instance, irreparable harm is automatically established by even the minimal loss of First Amendment freedoms. *Miller*, 622 F.3d at 540 (citing *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989), wherein prisoners were found to have established irreparable harm, even though the First Amendment violation in question was not ongoing, but rather was the discrete event of the prisoners' removal from certain positions.). "Likewise, the determination of where the public interest lies also is dependent on a determination of the likelihood of success on the merits of the First Amendment challenge because 'it is always in the public interest to prevent the violation of a party's constitutional rights.'" *Connection Distrib. Co.* 154 F.3d at 288 (quoting *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir.1994)). Finally, as these factors are to be balanced, the remaining factor, that of substantial harm to others, would have to be supported by an enormous amount of evidence, and the potential harm would have to be great in order to counter the weight of the other three factors where a constitutional violation is found to be likely.

### B. It is not clear that Plaintiff will succeed on the merits

Plaintiff presents three counts in her complaint. Count One alleges a violation of her First Amendment rights by way of the unconstitutional conditions doctrine, Count Two alleges First Amendment retaliation, and Count Three alleges a Fourteenth Amendment procedural due process violation. Counts One and Two both implicate Plaintiff's freedom

of speech, and therefore the starting point for the Court's analysis is whether Plaintiff engaged in behavior protected by the First Amendment.

### 1. The Court cannot make an accurate determination regarding Plaintiff's speech

There is a large body of law governing the First Amendment protections of public employees and government contractors. Specifically, public employees are subject to a reduction of their First Amendment protections, such that a public employee's speech is only protected where the public employee is speaking "as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)(citing *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563 (1968))

In the instant case, while Plaintiff is not a public employee, in the traditional sense of the term, it is established that being on a government referral list as a service provider is akin to being an independent contractor working for the government. *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 716-19 (1996); *Lucas v. Monroe County*, 203 F.3d 964, 972 (6th Cir. 2000). It is also established that independent government contractors receive substantially similar, albeit slightly adjusted, First Amendment protections as those afforded traditional public employees. *Board of County Com'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 673 (1996). It follows then, that the government cannot condition the placement on such a list, or effect the removal from such a list, based solely on a person's protected speech. *Lucas*, 203 F.3d at 972. Here, there is no dispute that Plaintiff was removed from a government referral list as a service provider, in this case, legal services. Nor is there a dispute that Plaintiff's removal from the list was the direct result of her comment on Facebook.

Having established that, in broad strokes, Plaintiff's circumstances fall under the umbrella of the First Amendment in the context of public employees, the next step is to determine whether or not Plaintiff engaged in protected speech.

### a. Plaintiff's speech did not arise as a result of her duties as an independent government contractor

The Supreme Court thoroughly analyzed the scope of the First Amendment's protections for public employees in *Garcetti v. Ceballos*, 547, U.S. 410. The *Garcetti* court added another dimension to the *Pickering* rule that the First Amendment only protects the public employee who is speaking as a citizen addressing matters of public concern. Crucial to the analysis, the *Garcetti* court held, is whether the speech at issue was made pursuant to the employee's official duties. Specifically, the Court held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.

The Sixth Circuit recently fleshed out *Garcetti's* requirement that a determination be made as to whether a public employee's statements were made "pursuant to their official duties," noting that a court must "look to the content and context" of the speech. *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531 (6th Cir. 2012)(citing *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir. 2010). The *Handy-Clay* court further stated that the Sixth Circuit has:

> identified a number of factors to consider in this determination, including "the impetus for her speech, the setting of her speech, the speech's audience, and its general subject matter." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 546 (6th Cir.2007). Relevant considerations include whether the statements were made to individuals "up the chain of command," *Fox*, 605 F.3d at 350 (quoting *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir.2008)),

> and whether the content of the speech is "nothing more than 'the quintessential employee beef: management has acted incompetently.' " *Haynes v. City of Circleville*, 474 F.3d 357, 365 (6th Cir.2007) (quoting *Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir.1988)). Factors that may be relevant but are not dispositive include whether the speech was made inside or outside of the workplace and whether it concerned the subject-matter of the speaker's employment.

*Handy-Clay*, 695 F.3d at 540-41. Finally, a key metric by which to determine whether an employee's speech was made pursuant to her official duties is whether that speech "owes its existence to [her] professional responsibilities." *Handy-Clay*, 694 F.3d at 540 (quoting *Garcetti*, 547 U.S. at 421-422).

In this case, the exact content of the speech at issue is not available for the Court to review. Plaintiff voluntarily deleted the Facebook post shortly after receiving a complaint about it. As such, the Court is left with competing descriptions about the tenor and tone of the post. What there is no dispute about, however, is the fact that Plaintiff's post was critical of specific actions taken by the Washtenaw Probate Clerk's Office in a case Plaintiff was handling and it personally identified two court employees.

From the evidence currently before the Court, it appears that the case Plaintiff was complaining about on Facebook was not a case she received by virtue of her presence on the list. If it was an assignment list case, the inquiry would likely end there, because the post would "owe its existence" to her official duties as an attorney on the list, and would be nothing more than "the quintessential employee beef: management has acted incompetently." *Handy-Clay*, 695 F.3d at 540-41.

The evidence, however, points in the other direction, and it appears that Plaintiff was talking about a case that she acquired through other channels. Furthermore, Plaintiff was talking about the case in a private - or at least semi-private - setting, namely her Facebook

7

page which has limiting privacy settings enabled. A strong case, therefore, can be made for the speech as being that of a "citizen" rather than a public employee. In other words, because the case Plaintiff was complaining about did not come to her via the list, she was complaining about a case she was working on as a private attorney. As is further discussed below, to find in a such a case that an attorney was speaking as a public employee would jeopardize the First Amendment protections of the speech of every private attorney who occasionally takes assignments from a court and regularly interacts with court personnel.

The Court finds that while Plaintiff was an independent government contractor by virtue of her presence on the list, her comment on Facebook was not made pursuant to her official duties, and that Plaintiff was therefore speaking "as a citizen." The next step is to determine whether that speech touched on a matter of public concern.

> **b. Without more information about the Facebook post the Court cannot make a determination regarding whether Plaintiff was speaking on a matter of public concern**

The Supreme Court, in *Connick v. Myers*, 461 U.S. 138, 147-48, (1983) held that the determination of whether or not speech touches on a matter of public concern must be made by reference to the content, form, and context of the speech. In applying *Connick*, the Sixth Circuit has described the requisite analysis as follows:

> [t]he threshold issue is whether the employee's speech addressed a matter of public concern, which is a matter of law for the court to decide. If the employee's speech does not address a matter of public concern...the employee's claim must fail. Matters of public concern are those that can "be fairly considered as relating to any matter of political, social, or other concern to the community. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. This Court has stated that speech is of 'public concern' if it involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government. Such matters of public

> concern are to be contrasted with internal personnel disputes or complaints about an employer's performance....More significant than why the employee spoke is what the employee intended to communicate by speaking. Based on these principles we must examine: the focus of the speech; the point of the speech in question; to what purpose the employee spoke; the intent of the speech; or the communicative purpose of the speaker. Finally, as a "corollary" to the focus test, the proper inquiry is not what might be "incidentally conveyed" by the speech, and that "passing" or "fleeting" references to an arguably public matter do not elevate the speech to a matter of "public concern" where the "focus" or "point" of the speech advances only a private interest.

*Van Compernolle v. City of Zeeland*, 241 F. App'x 244, 249 (6th Cir. 2007) (internal quotations and citations omitted).

Absent the specific language of the post, the Court cannot meaningfully engage in the analysis outlined above. While it is true that the efficient functioning of the Nation's courts is a matter of pubic concern, the record does not support a determination one way or the other at this point, especially given the conflicting descriptions of the Facebook post. Also, the fact that Plaintiff "tagged" two court employees in the post with whom she had personal relationships does not strengthen the argument in favor of a finding that the speech was of public concern. While there may be enough evidence to support Plaintiff's claims when viewed through the various lenses a Court uses during motion practice or at trial, to say that the evidence establishes a *likelihood* of success on the merits is a step too far.

Indeed, a recent Sixth Circuit case addressed a substantially similar situation, with regard to the absence of the actual language used by Plaintiff. In *Keeling v. Coffee Cnty., Tenn.*, the Sixth circuit stated that when "the context surrounding [plaintiff's] speech supports a finding that she was not speaking as a citizen and the specific content of the speech is absent from the record, [plaintiff] may not rely on vague generalizations to create

a factual issue." 12-6250, 2013 WL 4034415, *6 (6th Cir. Aug. 8, 2013). While *Keeling* dealt with the standard on a motion for summary judgment, the analysis is relevant, as Plaintiff is attempting to demonstrate the likelihood of success on the merits. Here, the specific content of the speech is absent from the record, and the context surrounding the speech consists of vague, conflicting generalizations with regard to the matters-of-public-concern prong of the analysis. Given the vagueness of the record, the Court cannot find that Plaintiff has established a likelihood of success on the merits on her First Amendment retaliation claim.

### c. A note on the unique position of attorneys

The unique duties of attorneys complicate the analysis in this case. That is, many attorneys find themselves in the position of having a "workplace" that often includes government buildings and regular interactions with government employees, even where the attorney is privately employed. The main complicating factor however, arises where a private attorney is also in some instances an independent contractor to a court or other government agency. Such attorneys are in a special position to be able to comment on the functioning of government, which is, generally speaking, a matter of public concern. Unfortunately, that means that when such an attorney feels compelled to complain about the daily difficulties of his or her job, there is a chance that the attorney's lament will concern a government entity's performance, or lack thereof. As the Supreme Court noted in *Garcetti,* "[u]nderlying [these] cases has been the premise that while the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance" 547 U.S. at 420. It is incumbent, therefore, upon a court tasked with making the relevant First Amendment determinations to be mindful of

the additional wrinkle in the analysis in this type of case, and to be wary of cases where the speech in question is dressed in the trappings of public concern as a side-effect of the lawyer's work, but is ultimately a mere workplace complaint.

### 2. The unconstitutional conditions doctrine is not applicable under the facts alleged

The Supreme Court, in *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 716-19 (1996) discussed the unconstitutional conditions doctrine, and then made a distinction between the cases where that doctrine is appropriate - for instance, where continued government employment is conditioned on the expression of one political belief or another - and cases like Plaintiff's, where a government employer allegedly takes an adverse action in retaliation for employee or service provider's exercise of the right of free speech.

Plaintiff has not alleged that Defendants are requiring her to say or do something in order for her to be reinstated to the list. Rather, Plaintiff has alleged that she was removed from the list as a result of the exercise of her First Amendment rights. Indeed, there is no dispute that Defendants told Plaintiff that while she has been removed from the list, she is welcome to reapply as of January 2013, which further supports the Court's determination that there is no "condition" here. This is simply a case of alleged retaliation. Therefore, the Court finds that Plaintiff has failed to establish the likelihood of her success on the merits with regard to her unconstitutional conditions claim.

### 3. Plaintiff has not alleged the cognizable loss of a property interest necessary to sustain a claim under the Fourteenth Amendment's Due Process Clause

Plaintiff claims that her Fourteenth Amendment procedural due process rights were violated under the "void for vagueness" doctrine. A procedural due process claim, requires a plaintiff to show that (1) [s]he had a life, liberty, or property interest protected by the Due Process Clause; (2) [s]he was deprived of this protected interest; and (3) the state did not afford [her] adequate procedural rights prior to depriving [her] of the property interest." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

Here, Plaintiff argues that she has somehow lost an interest in her license to practice law. This assertion is meritless. While it is uncontested that Plaintiff has a property interest in her license, Defendants have no authority, nor is it alleged that they purported to have any authority, over Plaintiff's law license. Being removed from the assignment list has nothing whatsoever to do with Plaintiff's ability to practice law in the State of Michigan. Plaintiff has not alleged that any formal attorney disciplinary action has been undertaken against her, indeed, she complains that her removal from the list occurred outside the established framework for attorney discipline.

It should be noted that it is unlikely that Plaintiff has a constitutionally recognized interest in remaining on the assignment list, but her complaint does not address that issue, instead focusing on her law license.[4]

---

[4] Whether or not Plaintiff has such an interest in remaining on the list is a matter of "the mutual nature of the relationship" created by inclusion on the assignment list. *McClain v. NorthWest Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 331 (6th Cir. 2006). Furthermore, "[n]o constitutional entitlement to procedural due process can logically arise when the decision-maker's power is wholly discretionary." *McClain*, 440 F.3d at 330. Defendants Edwards-Brown and Dwyer both testified that there is no written policy for removal from the list and that Defendant Edwards-Brown is vested with the authority to make removals from the list as she sees fit. Unfortunately for Plaintiff, under *McClain*, her allegations and the Defendants' testimony undercuts any possibility for the finding of a property interest in her inclusion on the assignment list.

Therefore, the Court finds that Plaintiff has failed to establish the likelihood of her success on the merits with regard to her Fourteenth Amendment procedural due process claim.

### C. The remaining preliminary injunction factors do not support the granting of injunctive relief

Plaintiff has failed to demonstrate likelihood of success on the merits on any of her three claims, and as a result, the remaining preliminary injunction factors weigh in favor of denying her motion. Specifically, because she has not established the likelihood of success on the merits of her alleged constitutional violation, and she has not made any other claims that would approach irreparable harm, that factor weighs against granting the motion. The likelihood of harm to others is neutral in this instance, as no one else is likely to be harmed in this situation. Finally, while the public has an interest in preventing constitutional violations, the public's interest, at this point, is minimal because of the absence of a likelihood of success on the merits.

The Court finds, therefore, that the balance of interests weigh against granting Plaintiff's motion for a preliminary injunction and hereby DENIES said motion.

### III. CONCLUSION

For the reasons stated above, specifically because Plaintiff has failed to demonstrate a likely success on the merits or irreparable harm, her motion for a preliminary injunction is DENIED.

SO ORDERED.

          s/Nancy G. Edmunds
          Nancy G. Edmunds
          United States District Judge

Dated:  December 23, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 23, 2013, by electronic and/or ordinary mail.

          s/Johnetta M. Curry-Williams
          Case Manager
          Acting in the Absence of Carol Hemeyer