# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF MICHIGAN

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

LESLIE ANN BUTLER,

        Plaintiff,                        Case No. 2:13-cv-13738

vs.

                                        Honorable Nancy G. Edmunds

LINDA EDWARDS-BROWN and
DANIEL B. DWYER, in their
Individual and official capacities,

        Defendants.

_____

HUGH M. DAVIS (P12555)
CYNTHIA HEENAN (P53664)
Constitutional Litigation Associates, P.C.
Attorneys for Plaintiff
450 W. Fort Street, Suite 200
Detroit, MI  48226
(313) 961-2255;  fax (313) 961-5999
Davis@ConLitPC.com
Heenan@ConLitPC.com

ROBERT D. HORVATH (P27633)
Co-Counsel for Plaintiff
2833 Crooks Road, Suite 104
Troy, MI  48084
(248) 614-4770; fax (248) 822-3174
Rdhjdlo@aol.com

THOMAS R. WURST (P30177)
GREGORY P. RIPPLE (P70507)
REBECCA L. STRAUSS (P64796)
Miller Johnson
Attorneys for Defendants
250 Monroe, NW, Suite 800
Grand Rapids, MI  49503
(616) 831-1775; fax (616) 988-1775
wurstt@millerjohnson.com
rippleg@millerjohnson.com
straussr@millerjohnson.com

_____

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In accordance with Federal Rule of Civil Procedure 56, Defendants Linda Edwards-Brown and Daniel Dwyer move for summary judgment. There are no material facts in dispute in this case, and Defendants are entitled to judgment as a matter of law. As explained in the accompanying Brief:

- Defendants are entitled to absolute quasi-judicial immunity for actions relating to the attorney appointment list maintained by the Washtenaw County Probate Court;

- Plaintiff cannot establish a prima facie case of First Amendment retaliation, because she cannot establish that she engaged in protected speech;

- Plaintiff's complaint fails to allege facts sufficient to support her claim of an Unconstitutional Condition;

- Plaintiff's due process claim fails, because she has not alleged that she has been deprived of a property interest; and

- Defendants are entitled to qualified immunity.

In accordance with Local Rule 7.1, undersigned counsel sought concurrence with this Motion from the Plaintiff, but was unable to obtain such concurrence.

This Motion is supported by the accompanying brief, the attachments to the brief, the pleadings in this case, and the attachments to those pleadings.

2

Respectfully submitted,

Dated:  February 19, 2014             /s/ Gregory P. Ripple
                                      Thomas R. Wurst   (P30177)
                                      Gregory P. Ripple (P70507)
                                      Rebecca L. Strauss (P64796)
                                      MILLER JOHNSON
                                      Attorneys for Defendants
                                      250 Monroe Avenue NW, Suite 800
                                      Grand Rapids, MI  49503
                                      (616) 831-1700
                                      wurstt@millerjohnson.com
                                      rippleg@millerjohnson.com
                                      straussr@millerjohnson.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2014, I electronically filed the foregoing paper with the Clerk of the Court by using the ECF system which will send notification of such filing to all parties of record.

Dated: February 19, 2014              /s/ Gregory P. Ripple
                                      Gregory P. Ripple (P70507)
                                      MILLER JOHNSON
                                      Attorneys for Defendants
                                      250 Monroe Avenue N.W., Suite 800
                                      P.O. Box 306
                                      Grand Rapids, MI 49501-0306
                                      (616) 831-1700
                                      rippleg@millerjohnson.com

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

**************************

LESLIE ANN BUTLER,

                Plaintiff,                      Case No. 2:13-cv-13738

vs.

                                            Honorable Nancy G. Edmunds

LINDA EDWARDS-BROWN and
DANIEL B. DWYER, in their
Individual and official capacities,

                Defendants.

_____

| | |
|---|---|
| HUGH M. DAVIS (P12555) | ROBERT D. HORVATH (P27633) |
| CYNTHIA HEENAN (P53664) | Co-Counsel for Plaintiff |
| Constitutional Litigation Associates, P.C. | 2833 Crooks Road, Suite 104 |
| Attorneys for Plaintiff | Troy, MI  48084 |
| 450 W. Fort Street, Suite 200 | (248) 614-4770; fax (248) 822-3174 |
| Detroit, MI  48226 | Rdhjdlo@aol.com |
| (313) 961-2255;  fax (313) 961-5999 | |
| Davis@ConLitPC.com | |
| Heenan@ConLitPC.com | THOMAS R. WURST (P30177) |
| | GREGORY P. RIPPLE (P70507) |
| | REBECCA L. STRAUSS (P64796) |
| | Miller Johnson |
| | Attorneys for Defendants |
| | 250 Monroe, NW, Suite 800 |
| | Grand Rapids, MI  49503 |
| | (616) 831-1775; fax (616) 988-1775 |
| | wurstt@millerjohnson.com |
| | rippleg@millerjohnson.com |
| | straussr@millerjohnson.com |

_____

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

## STATEMENT OF ISSUES PRESENTED

1. **Are Defendants entitled to absolute quasi-judicial immunity?**

Defendants answer: Yes.   Defendants' actions relating to the appointment of legal counsel, an inherently judicial act, are entitled to absolute quasi-judicial immunity.

2. **Are Defendants entitled to summary judgment on Plaintiff's First Amendment retaliation claim?**

Defendants answer: Yes.  Plaintiff cannot establish a prima facie case of First Amendment Retaliation.  Plaintiff cannot establish through admissible evidence that she engaged in protected speech.  Plaintiff cannot produce the Facebook post which led to her removal from the Washtenaw County Probate Court's attorney appointment list, and cannot establish that her speech addressed a matter of public concern.

3. **Are Defendants entitled to summary judgment on Plaintiff's unconstitutional condition claim?**

Defendants answer: Yes.  Plaintiff's Complaint fails to allege facts necessary to support an unconstitutional condition claim.

4. **Are Defendants entitled to summary judgment on Plaintiff's due process claim?**

Defendants answer: Yes.  Plaintiff cannot demonstrate that her due process rights were violated because she has not been deprived of a property interest.

1

5.      **Are Defendants entitled to qualified immunity?**

Defendants answer: Yes.  Plaintiff cannot establish that Defendants' actions were objectively unreasonable in light of clearly established constitutional precedent.

## CONTROLLING AUTHORITY

On the issue of whether Defendants are entitled to absolute quasi-judicial immunity: *Mireles v Waco*, 502 U.S. 9 (1991); *Joseph v. Patterson*, 795 F.2d 549 (6th Cir. 1986); *Bush v. Rausch*, 38 F.3d 842, 847 (6th Cir. 1994); *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997); *Davis v. Tarrant County, Texas*, 565 F.3d 214 (5th Cir. 2009); *Roth v. King*, 449 F.3d 1272 (D.C. Cir. 2006).

On the issue of whether Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claim: *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Connick v. Myers*, 461 U.S. 138 (1983); *Board of Commissioners, Wabaunsee County v. Umbehr*, 518 U.S. 668 (1996); *Keeling v. Coffee County*, 2013 U.S. App. LEXIS 16593 (6th Cir. August 8, 2013).

On the issue of whether Defendants are entitled to summary judgment on Plaintiff's unconstitutional condition claim: *O'Hare Trucking Serv., Inc. v. City of Northlake*, 518 U.S. 712 (1996).

On the issue of whether Defendants are entitled to summary judgment on Plaintiff's due process claim: *Hahn v. Start Bank*, 190 F.3d 708 (6th Cir. 1999); *Med Corp, Inc. v. City of Lima*, 296 F.3d 404 (6th Cir. 2002).

On the issue of whether Defendants are entitled to qualified immunity, *Malley v. Briggs*, 475 U.S. 335 (1986); *Hills v. Kentucky*: 457 F.3d 583 (6th Cir. 2006); *Floyd v. City of Detroit*, 518 F.3d 398 (6th Cir. 2008).

# FACTUAL BACKGROUND

## I.      THE PARTIES

Defendant Linda Edwards-Brown is the administrator of the County's Juvenile and Probate Court (Compl. &  Answ. ¶3).  Defendant Dan Dwyer is the chief administrator of the Washtenaw County Trial Court.  (Compl. & Answ. ¶4).

Plaintiff is an attorney who operates a solo practice in Washtenaw County, Michigan. (Pl.'s Dep. 26/1-13) (Attached as Exh. C).  Her primary areas of practice are real estate law, estate planning, and business law.  (Pl.'s Dep. 27/4-6).  Plaintiff was first admitted to the Bar in November 2008.  (Pl.'s Dep. 15/13-14).

## II.     THE WASHTENAW COUNTY PROBATE COURT ATTORNEY APPOINTMENT LIST

The Washtenaw County Probate Court regularly appoints attorneys for indigent parties.  Pursuant to Michigan Supreme Court Administrative Order 2003-05 and Michigan Court Rule 8.123, the Chief Judge of the Washtenaw County Trial Court issued Local Administrative Order 2008-01(P81).  (Dwyer Decl. ¶5) (Attached as Exh. A).  The Chief Judge's Order provides the procedures for selection, appointment, and compensation of appointed counsel in the Probate Court.  (Dwyer Decl. Exh. 1).  The Order creates an attorney appointment list on which attorneys may be placed after meeting certain criteria, including completing training and maintaining adequate malpractice insurance.  (*Id.*).  The Order

4

provides that the Office of the Probate Register is responsible for administering the attorney appointment list. (*Id.*). The chief administrator has issued a policy implementing Local Administrative Order 2008-01(P81). (Dwyer Decl. ¶7). Whenever an attorney is appointed off the attorney appointment list, the Court issues an order reflecting the appointment. (Edwards-Brown Decl. ¶4) (Attached as Exh. B).

Plaintiff completed the portion of the required training in the Fall of 2009 and was placed on the attorney appointment list. (Pl.'s Dep. 80/23-25). Compl. & Answ. ¶9). In 2010, Plaintiff completed the training for cases involving the developmentally disabled and the mental health docket. (Pl.'s Dep. 81/2-12).

## III.   PLAINTIFF'S PERSONAL FACEBOOK ACCOUNT

Plaintiff maintains a personal Facebook account, as well as a separate Facebook account for her law firm. (Pl.'s Dep. 64/19-25).[1] Plaintiff described her Facebook page as personal in nature. (Pl.'s Dep. 74/4-5). At her deposition, Plaintiff described the various personal posts that she posted on her Facebook

---

[1] The user name of Plaintiff's personal Facebook account is currently P'u Sung-Ling, but before April 2012 her user name was Leslie Koepp Butler. (Pl.'s Dep. 69/15-19; 72/17-22). Plaintiff testified that after April 2012 she changed her user name from her name to the name of an 18th century Chinese philosopher, apparently as an Internet *nom de plume*. Plaintiff testified that she simply changed her user name and did not create a new account or otherwise change the settings of her account. (Pl.'s Dep. 76/1-11).

page, including pictures of her pet cat, stories about her kids and birthday greetings to her Facebook friends.  (Pl.'s Dep. 73/8-18).

Plaintiff has set the privacy settings on her Facebook page so that her posts are not visible to the general public and can only be seen by her Facebook "friends."  (Pl.'s Dep. 75/13-25).  Plaintiff testified that she could not recall how many friends she had on Facebook in April 2012, but admits that the reach of her Facebook posts were limited.  (Pl.'s Dep. 76/12 – 77/2).

Plaintiff also testified that she used her Facebook page to communicate with her Facebook friends.  She posted messages on their Facebook "wall" or sent them instant messages.  (Pl.'s Dep. 74/6-14).  Plaintiff also "tagged" her Facebook friends in posts.[2]  Plaintiff testified that she viewed tagging as another form of communication with her Facebook friends.  (Pl.'s Dep. 75/2-12).

## IV.   PLAINTIFF'S FACEBOOK POST REGARDING THE WASHTENAW COUNTY PROBATE COURT

In April 2012, Plaintiff posted a comment on her personal Facebook about an interaction she had with the Probate Clerk's office in a case she was handling.  (Pl.'s Dep. 93/2 – 96/2).  Plaintiff later deleted the post, however, and

---

[2] Facebook allows users to "tag" others in posts, even where the individual does not request to be "tagged."  When an individual has been "tagged" the post appears on their Facebook page and becomes associated with the tagged individual's account. *See* How Tagging Works, www.facebook.com/about/tagging (November 8, 2013).

6

testified that she could not remember the post's exact contents.  During her deposition, she could only describe the post in general terms:

> Q. And what did you post?
>
> A. I'm not sure exactly what I posted.
>
> . . .
>
> Q. And you said you don't remember exactly what you posted?
>
> A. Correct.
>
> Q. Why can't you say exactly what you posted?
>
> A. I can't say exactly what I posted because it was up for about five minutes and then it was immediately deleted. And I haven't seen it for almost two years, so I don't know exactly what I posted.
>
> . . .
>
> Q. All right. So you don't remember exactly what you posted. What do you remember about the post?
>
> A. What I remember about the post was saying after receiving some paperwork three weeks late from Washtenaw County Probate Court Clerk's office, today I received a nice 30-day reminder letter for an upcoming task. Perhaps -- or, perhaps they are turning over a new leaf. And then -- and then I – Katherine Streeter, Erin Streeter, perhaps you could shed some light on this.

(Pl.'s Dep. 94/18-20; 95/6-13; 95/18 – 96/2).

When she mentioned Katherine and Erin Streeter in her post, she "tagged" them.  (Pl.'s Dep. 96/3-5).  Plaintiff testified that she tagged the Streeters in order to communicate directly with them.  (Pl.'s Dep. 96/6-14).  Katherine and

7

Erin Streeter were Plaintiff's Facebook friends so they had access to Plaintiff's Facebook post.  (Pl.'s Dep. 97/4-9).  Plaintiff had worked with Erin Streeter at a realty office before attending law school.   (Pl.'s Dep. 97/10-98/6).   Plaintiff testified that she occasionally socialized with Erin outside of the office and had met Katherine through Erin, her sister.  (Pl.'s Dep. 98/9 – 99/2).  The Streeters were both employees of the Washtenaw Trial Court at the time of Plaintiff's Facebook post.  (Pl.'s Dep. 96/15-24).  Katherine Streeter is currently a court reporter for all divisions of the Trial Court.  (Streeter Dep. 3/16-23) (Attached as Exh. F).

## V.   PLAINTIFF IS REMOVED FROM ATTORNEY APPOINTMENT LIST AS A RESULT OF HER FACEBOOK POST

When Plaintiff "tagged" her in her Facebook post, Katherine Streeter received notice on her phone. (Streeter Dep. 27/19-22).  Ms. Streeter testified that she is not an employee of the Probate Court and she believed Plaintiff had implied in the post that she did not know how to do her job.  (Streeter Dep. 17/11-13; 17/15-25; 27/8).   Ms. Streeter brought the post to the attention of Defendant Edwards-Brown.

Ms. Edwards-Brown believed that Plaintiff's Facebook post was "degrading of the staff who work in that office.  I thought it was derogatory." (Edwards-Brown Dep. 54/2-3) (Attached as Exh. D).  By letter dated April 17,

8

2012, Ms. Edwards-Brown informed Plaintiff that she had been removed from the Probate Court's attorney appointment list.  (Pl's. Dep. Exh. 3).

Defendant Dwyer testified that he supported Ms. Edwards-Brown's decision to remove Plaintiff from the attorney appointment list.   Mr. Dwyer testified that it was reported to him that Plaintiff's Facebook post contained:

> Derogatory comments about how the Probate Court was run and tagged my employees, which they took very personally.

(Dwyer Dep. 19/20-22) (Attached as Exh. E).   Mr. Dwyer later reiterated his testimony that "staff had been tagged and took it very offense –". (Dwyer Dep. 20/16-17).  He further testified that he was concerned of the effect of the Plaintiff's Facebook posts on court operations.  (Dwyer Dep. 40/23 - 41/5).

Mr. Dwyer informed Plaintiff that she was eligible to reapply for placement on that list in January 2013.  (Pl.'s Dep. Exh. 9).  To date, Plaintiff has not reapplied for placement on the Probate Court's attorney appointment list. (Pl.'s Dep. 114/9-13).

## ARGUMENT

## I.    SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A moving party may meet

9

that burden by demonstrating "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

## II.    THE DEFENDANTS ENJOY QUASI-JUDICIAL ABSOLUTE IMMUNITY

Absolute immunity is a legal entitlement for various public servants, "enabling such officials to perform their designated functions effectively without fear that a particular decision may give rise to personal liability." *Clinton v. Jones*, 520 U.S. 681, 693 (1997). Judges are specifically provided total immunity from suit at law or in equity. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991). This immunity

10

is overcome only when judges engage in "nonjudicial actions, i.e., actions not taken in the judge's judicial capacity," or when their "actions, though judicial in nature, taken in complete absence of all jurisdiction." *Id.* at 11.

"Quasi-judicial" immunity is an absolute derivative immunity extended to non-judicial officers who perform judicial actions. Quasi-judicial immunity is extended "to those persons performing tasks so integral or intertwined with the judicial process that those persons are considered an arm of the judicial officer who is immune." *Bush v. Rausch*, 38 F.3d 842, 847 (6th Cir. 1994); *Joseph v. Patterson*, 795 F.2d 549, 560 (6th Cir. 1986). Accordingly, "[o]ne who acts as the judge's designee, and who carries out a function for which the judge is immune, is likewise protected." *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997). Courts examine "the nature of the function performed, not the identity of the actor who performed it" to determine if an act warrants immunity. *Lomaz v. Hennosy*, 151 F.3d 493, 397 (6th Cir. 1998) (internal quotations omitted). Immunity is not lost even if "the action taken was erroneous, malicious, or exceeded authority." *Campbell v. Patterson*, 724 F.2d 41, 43 (6th Cir. 1983) (*citing Stump v. Sparkman*, 435 U.S. 349 (1978)).

Quasi-judicial immunity applies when a judge expressly delegates a judicial act to a court administrator. In *Coleman v. Caruso*, 413 Fed. Appx. 866 (6th Cir. 2011), the Chief Judge of the Ingham County Circuit Court issued an

11

administrative order delegating the authority to dismiss lawsuits filed in absence of statutory filing fees to court administrators.  Because dismissing a lawsuit was a judicial act, the delegation of authority to perform this function extended quasi-judicial immunity to the administrators when exercising that function.  *Id*. at 873-874.   Similarly, the Sixth Circuit approved the application of quasi-judicial immunity to the Kentucky Board of Bar Examiners for controlling admission to the state bar, a function "so inherently related to the essential functioning of the courts as to be traditionally regarded as [a] judicial act[]."  *Sparks v. Character & Fitness Committee*, 859 F.2d 428 (6th Cir. 1988).

 The Supreme Court has directed that in determining whether an act is "judicial" courts should look to the nature of the act itself and determine whether the act is a "function normally performed by a judge."  *Mireles*, 502 U.S. at 12.  The 6th Circuit has found that the appointment of counsel in a particular case is an inherently judicial act that enjoys absolute judicial immunity.  *Reid v. Washtenaw Circuit Court*, 791 F.2d 934 (6th Cir. 1986).

 Several federal Courts of Appeals have recognized that the placement and removal of counsel from an attorney appointment list also constitutes an inherently judicial function.  In *Davis v. Tarrant County, Texas*, 565 F.3d 214 (5th Cir. 2009), the Fifth Circuit held that:

> the act of selecting applicants for inclusion on a rotating
> list of attorneys eligible for court appointments is

12

>inextricably linked to and cannot be separated from the
>act of appointing counsel in a particular case, which is
>clearly a judicial act, and therefore… the judges' acts at
>issue in this suit must be considered to be protected by
>judicial immunity.

*Id.* at 226.

In *Roth v. King*, 449 F.3d 1272 (D.C. Cir. 2006), the D.C. Circuit faced facts very similar to those in the present case. In *Roth*, plaintiffs were attorneys denied inclusion on a probate court appointment panel. The plaintiffs sued both the superior court judges that issued the appointment order and the administrators of the panel who decided to include or exclude attorneys from the list. The D.C. Circuit held that the judges enjoyed absolute judicial immunity because the creation of the appointment list and the appointment of counsel off the list were inherently judicial acts. *Id.* at 1286-87. As for the administrators charged with selecting attorneys for the list, the D.C. Circuit declared it "beyond question" that their role was "related to the judicial process and the District Court properly afforded them judicial immunity." *Id.* at 1287. This was because "it is well established that judicial immunity extends to other officers of government where duties are related to the judicial process." *Id.* (internal quotations omitted).

The rationale of the D.C. Circuit in *Roth* applies directly to this very similar case. Michigan Court Rule 8.123 requires:

>Each trial court must adopt a local administrative order
>that describes the court's procedures for selecting,

13

appointing, and compensating counsel who represent indigent parties in that court.

Pursuant to MCR 8.123, the Chief Judge of the Washtenaw Trial Court issued an order establishing the attorney appointment list for the Washtenaw County Probate Court. This is a judicial act entitling the actor to absolute immunity, because the list itself limits the pool from which a presiding judge may select counsel. The Defendants in this case have been delegated the responsibility for administering the list. Their role is intertwined with the judicial process and indivisible from the unambiguously judicial act of appointing counsel. Accordingly, the Defendants also enjoy quasi-judicial absolute immunity for their actions related to the attorney appointment list, even if "the action taken was erroneous, malicious, or exceeded authority." *Campbell v. Patterson*, 724 F.2d 41, 43 (6th Cir. 1983).

## III.   PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF FIRST AMENDMENT RETALIATION

In Count II of her Complaint, Plaintiff alleges that she was unlawfully retaliated against by Defendants for exercising her First Amendment rights. In order to establish a prima facie case of First Amendment retaliation in the Sixth Circuit, Plaintiff must demonstrate that:

(1)   she engaged in constitutionally protected conduct;

(2)   an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in that conduct; and

14

(3)   the adverse action was motivated at least in part by her protected conduct.

*Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012).   In this case, Defendants are entitled to summary judgment because Plaintiff cannot demonstrate that she engaged in constitutionally protected conduct.

Plaintiff, as the Court recognized in its December 23, 2013 Order, was a government contractor.   In cases involving public employees and contractors, the Supreme Court has established a three-part test for evaluating whether speech is constitutionally protected.   A plaintiff must show (1) that her speech was made as a private citizen, rather than pursuant to her official duties; (2) that her speech involved a matter of public concern; and (3) that her interest as a citizen in speaking on the matter outweighed the state's interest, as an employer, in "promoting the efficiency of the public services it performs through its employees."   *Garcetti v. Ceballos*, 547 U.S. 410, 417-18 (2006) (citation and internal quotation marks omitted); *see also Westmoreland v. Sutherland*, 662 F.3d 714, 718-19 (6th Cir. 2011) (citing *Garcetti*).

Plaintiff cannot establish either that her speech involved a matter of public concern or that her interest as a citizen in speaking on the matter outweighed the state's interest in "promoting the efficiency of the public services it performs through its employees."   Defendants are therefore entitled to summary judgment on Count II of Plaintiff's Complaint.

**A.    Plaintiff Cannot Demonstrate That Her Facebook Post Involved a Matter of Public Concern Because She Cannot Produce Specific Evidence of the Content of Her Speech**

Plaintiff bears the burden on demonstrating that she engaged in protected conduct.  In her Complaint, Plaintiff alleges:

> In April 2012, Plaintiff made a comment about the Probate Court clerk's performance, which implicated administrative competence of that office.  She posted this comment on Facebook on April 4, 2012 and it was tagged for notice to Erin and Katherine Streeter, who were acquaintances of Plaintiff as well as personnel of the trial court.

Compl. ¶10.  Plaintiff does not provide a copy of the Facebook post or the language actually used in the post.  Indeed, Plaintiff admits she later deleted the post, and at her deposition testified that she could not remember the details of the post.  Her inability to produce specific evidence of the content of her speech is fatal to her claim of First Amendment Retaliation.

The Sixth Circuit requires a plaintiff to establish the specific content of her speech, and held that a plaintiff cannot rely on vague generalizations. *Keeling v. Coffee County*, 2013 U.S. App. LEXIS 16593, 16-17 (6th Cir. August 8, 2013). *See also Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1123-24 (7th Cir. 2009) (holding that a First Amendment retaliation claim failed as a matter of law where the plaintiff could not show the content, context, or form of the speech).

In *Dunkel v. Mt. Carbon/North Manheim Fire Co.*, 2013 U.S. Dist. LEXIS 128039 (M.D. Pa. September 9, 2013), the district court dealt with similar facts as presented in this case. The plaintiff alleged that he had made certain Facebook posts criticizing public officials, but could not produce the posts. The district court held that the plaintiff's assertion that his speech was protected by the First Amendment was a conclusion of law that the court need not accept as true:

> In the instant case, Dunkel has not provided sufficient information regarding the speech he engaged in for the court to make a reasoned determination as to whether it is constitutionally protected. Dunkel asserts that he "had posted on Facebook calling the trustees 'cowards' for suspending him in a meeting without notice, and complaining that the trustees suspended him for helping a family in need."

*Id*. at *21. The court went on to find that it must know the content, form and context of the speech to determine whether his speech related to a matter of public concern. The court also looked to the privacy settings on his Facebook page to determine if his statements were intended for public consumption. In the absence of this information, the court granted the defendant's motion to dismiss.

Likewise, in this case, Plaintiff's Complaint should be dismissed. Plaintiff bears the burden of establishing that she engaged in protected speech. She cannot do so. Having deleted the Facebook post, Plaintiff cannot rely on vague generalization to establish a prima facie case. Defendants are entitled to summary judgment on Count II of Plaintiff's Complaint.

17

**B.**    **Plaintiff Cannot Demonstrate That She was Speaking on a Matter of Public Concern**

Plaintiff must demonstrate that she was speaking on a matter of public concern.  Whether or not a plaintiff's speech touches on a matter of public concern is a question of law for the Court to decide.  *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2008).

The Supreme Court, in *Connick v. Myers*, 461 U.S. 138, 147-48, (1983) held that the determination of whether or not speech touches on a matter of public concern must be made by reference to the content, form, and context of the speech.  In applying *Connick*, the Sixth Circuit has outlined the following analysis:

> [t]he threshold issue is whether the employee's speech addressed a matter of public concern, which is a matter of law for the court to decide.  If the employee's speech does not address a matter of public concern...the employee's claim must fail.  Matters of public concern are those that can "be fairly considered as relating to any matter of political, social, or other concern to the community.  Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.  This Court has stated that speech is of 'public concern' if it involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government. . . . Based on these principles we must examine: the focus of the speech; the point of the speech in question; to what purpose the employee spoke; the intent of the speech; or the communicative purpose of the speaker.  Finally, as a "corollary" to the focus test, the proper inquiry is not what might be "incidentally conveyed" by the speech,

18

and that "passing" or "fleeting" references to an arguably
public matter do not elevate the speech to a matter of
"public concern" where the "focus" or "point" of the
speech advances only a private interest.

*Van Compernolle v. City of Zeeland*, 241 F. App'x 244, 249 (6th Cir. 2007)

(internal quotations and citations omitted*)*.

In this case, there is no evidence in the record to support Plaintiff's

contention that she was speaking on a matter of public concern. While the actual

post is not in the record (due to the actions of the Plaintiff), what we do know

demonstrates that Plaintiff was not speaking on a matter of public concern:

- Plaintiff used her Facebook page for purely personal reasons,
  like posting pictures of her cat and stories about her kids.

- Plaintiff's post concerned a personal experience she had with
  the probate clerk's office.

- Plaintiff herself described the post as "innocuous." (*See* Pl.'s
  Brief in Support of Motion for Preliminary Injunction, p. 9, fn3,
  DE #2).

- Plaintiff directed her post at two specific individuals by
  "tagging" them.

- Plaintiff's post was not "public" but could only be viewed by
  her "Facebook friends" – an extremely limited number of
  people.

The record evidence concerning the content, form, and context of

Plaintiff's Facebook post is far from sufficient to establish that she was addressing

a matter of public concern. Instead, the record proves that her post was a private

matter she described as "innocuous." Plaintiff's inability to demonstrate that she was speaking on a matter of public concern is fatal to her First Amendment retaliation case. She cannot establish a prima facie case of retaliation. Defendants, therefore, are entitled to summary judgment on Count II of Plaintiff's Complaint.

### C. Plaintiff Cannot Establish that Her Interest in Speaking as a Citizen Outweighed the Court's Interest in Promoting the Efficiency of its Services

The final prong of the *Garcetti* test requires the Plaintiff to establish that her interest in speaking as a citizen outweighed the Court's interest in "promoting the efficient of the public services it performs through its employees. *Garcetti*, 547 U.S. 410, 417-18 (2006). In *Leavey v. City of Detroit*, 467 Fed. Appx. 420 (6th Cir. 2012), the Sixth Circuit found that disparaging comments about another governmental entity—in particular, one with which plaintiff had regular and frequent interactions and was required to work with on a close and cooperative basis—were not protected by the First Amendment. *Id.* at 429.

The undisputed evidence in the record demonstrates that Plaintiff's Facebook posts disrupted the operations of the Washtenaw County Trial Court. Plaintiff directed her post at several Court employees, one of whom testified that she took the post "personally" and believed that Plaintiff had implied that she did not know how to do her job. Defendants likewise testified that Court staff had taken great offense at the post at what they considered derogatory comments in

20

Plaintiff's post.  The Court has no legal duty to tolerate such treatment of its employees and services by a contractor who had required frequent and required close contact with Court staff.   Again, Plaintiff cannot meet her burden of demonstrating that she engaged in protected speech, and Defendants are entitled to summary judgment on Count II of Plaintiff's Complaint.

## IV.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UNDER THE THEORY OF UNCONSTITUTIONAL CONDITION

Count I of Plaintiff's Complaint alleges that the Defendants have established an unconstitutional condition for placement on the attorney appointment list.  The factual allegations of Plaintiff's Complaint, however, fail to state a claim of unconstitutional condition and Plaintiff has presented no evidence that Defendants have imposed an unconstitutional condition.

The unconstitutional conditions doctrine applies when continued government service is conditioned on the expression of certain political belief or the requirement that the Plaintiff say or do something.  *See O'Hare Trucking Serv., Inc. v. City of Northlake*, 518 U.S. 712, 716-19 (1996).  The Supreme Court has distinguished retaliation claims from unconstitutional condition claims.  *Id.*

The Court, in its December 23, 2013 Order correctly found "Plaintiff has not alleged that Defendants are requiring her to say or do something in order for her to be reinstated to the list."  Plaintiff, therefore, has not pled or identified anything that the Defendants are requiring her to say or do in order for her to be

21

reinstated to the attorney appointment list. Indeed, the undisputed evidence in the record demonstrates Plaintiff was told that she could apply for reinstatement to the list in January 2013, but she has not done so. Defendants are entitled to summary judgment on Count I of Plaintiff's Complaint.

## V.   PLAINTIFF CANNOT ESTABLISH THAT DEFENDANTS DEPRIVED HER OF A PROPERTY INTEREST PROTECTED BY THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

In Count III of her Complaint, Plaintiff alleges that Defendants violated her due process rights. When a plaintiff claims that her due process rights were violated, she must first prove she had a property or liberty interest at stake. *Ferencz v. Hairston*, 119 F.3d 1244 (6th Cir. 1997). "Property interests are not created by the Fourteenth Amendment; instead, they are created and defined by independent sources, such as state law." *Id*. (Internal quotation omitted). Plaintiff argues that Defendants deprived her of her property interest as a licensed member in good standing of the Michigan bar.

In denying Plaintiff's Motion for a Preliminary Injunction, this Court correctly recognized that Plaintiff's assertion is "meritless." While Plaintiff does have a property interest in her license to practice law, Defendants did not deprive her of her license or her ability to use her license. The Sixth Circuit has recognized that injuries to the value of property constitute "constitutional deprivations only when such indirect injuries effectively render the property valueless." *Med Corp.,*

22

*Inc. v. City of Lima*, 296 F.3d 404, 413 (6th Cir. 2002) (internal quotations omitted).   This Court correctly noted that her removal from the attorney appointment list "has nothing whatsoever to do with Plaintiff's ability to practice law in the state of Michigan."   Defendants, therefore, are entitled to summary judgment on Count III of Plaintiff's Complaint.

## VI.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Plaintiff has sued Defendants in their individual capacity seeking monetary damages.   Government officials are immune from civil liability unless, in the course of performing discretionary functions, they violate the plaintiff's clearly established constitutional rights.   *Hills v. Kentucky*, 457 F.3d 583, 587 (6th Cir. 2006).   When a defendant moves for summary judgment on the issue of qualified immunity, courts first determine "whether, viewed in the light most favorable to plaintiff, the facts show that the officer's conduction violated a constitutional right."   *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009).   Second, the court must determine if the right was "so clearly established that a reasonable official would understand that what he is doing violates that right."   *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2001).   In other words, the court asks if "the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in the light of the clearly established constitutional precedent."   *Floyd v. City of Detroit*, 518 F.3d 398, 405 (6th Cir. 2008).   Qualified

23

immunity is inappropriate if a plaintiff can demonstrate that a defendant was "plainly incompetent" or "knowingly violated the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As explained above, Butler has not demonstrated a set of facts that could prove the Defendants violated her constitutional rights to freedom of speech and due process. But even assuming arguendo that Butler had made such a showing, the facts she has pled, when measured against the substantive constitutional law that existed at the time those facts occurred, are insufficient to demonstrate "objectively unreasonable" conduct from the Defendants. And because the "plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in that position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct," *Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th Cir. 2004), the Defendants are entitled to qualified immunity.

## CONCLUSION

For the reasons stated above, Defendants are entitled to summary judgment on all counts of Plaintiff's Complaint, and are entitled to not only limited immunity, but also enjoy absolute quasi-judicial immunity. Plaintiff's Complaint should be dismissed in its entirety.

24

Dated:  February 19, 2014      /s/ Gregory P. Ripple
                               Thomas R. Wurst  (P30177)
                               Gregory P. Ripple (P70507)
                               Rebecca L. Strauss (P64796)
                               MILLER JOHNSON
                               Attorneys for Defendants
                               250 Monroe Avenue NW, Suite 800
                               Grand Rapids, MI  49503
                               (616) 831-1700
                               wurstt@millerjohnson.com
                               rippleg@millerjohnson.com
                               straussr@millerjohnson.com

## CERTIFICATE OF SERVICE

       I hereby certify that on February 19, 2014, I electronically filed the foregoing paper with the Clerk of the Court by using the ECF system which will send notification of such filing to all parties of record.

Dated: February 19, 2014      /s/ Gregory P. Ripple
                               Gregory P. Ripple (P70507)

25