UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Leslie Ann Butler,

      Plaintiff,

v.

Linda Edwards-Brown and Daniel B. Dwyer,
in their individual and official capacities,

      Defendants.
_____/

Case No. 13-13738

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION TO AMEND [28 & 33]**

Currently before the Court is a motion for summary judgment filed by Defendants Linda Edwards-Brown and Daniel B. Dwyer and a motion to amend the complaint to add three new claims filed by Plaintiff. For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' motion and DENIES Plaintiff's motion.

**I.    FACTS**

This case was recently before the Court on Plaintiff's motion for a preliminary injunction, which was denied. With one exception, no evidence has been submitted to the Court for the Defendant's motion that was not already submitted on Plaintiff's earlier motion for a preliminary injunction. In particular, still missing from the record is the exact text of the Facebook post at the core of this lawsuit.

As the Court noted in its December 23, 2013 Order, many of the essential facts in this case are not in dispute:

Plaintiff is an attorney licensed to practice in Michigan. Compl. ¶ 2. In 2009 Plaintiff satisfied the eligibility requirements set forth by the Washtenaw County Probate Court in order to receive assignments from that court. Compl. ¶ 9. Plaintiff was placed on the assignment list and received several assignments, which she carried out satisfactorily. *Id.*

In April 2012, Plaintiff made a comment on Facebook[1] about the performance of the Clerk's Office at the Washtenaw Probate Court, specifically with regard to a case she was handling. Compl. ¶ 10. Plaintiff "tagged" two people with whom she had a pre-existing, personal relationship, mistakenly identifying them as Clerk's Office employees in her Facebook post, and identifying them by name. *Id.* Plaintiff testified that she believes her Facebook profile is set to only be visible to "friends" as opposed to the general public.[2] Butler Dep. 72:3-7, December 3, 2013. In a matter of days, Plaintiff received a letter from Defendant Edwards-Brown, the administrator of the Washtenaw Juvenile and Probate Courts. Compl. ¶ 11. That letter stated that Plaintiff had been removed from the assignment list because of her comment on Facebook. *Id.*

In July 2012, Plaintiff sought to be reinstated to the list in a meeting with Defendant Dwyer, the Chief Administrator of the Washtenaw Trial Court. Compl. ¶ 12. Defendant Dwyer refused to reinstate Plaintiff. *Id.*

In December 2012, Plaintiff attempted to demonstrate her eligibility for placement on the list by attending the required seminar, but was told via email by Defendant Edwards-Brown that she remained ineligible for the list, but that she could reapply for placement on the list in the future. J. Ex. 15. Specifically, Plaintiff was told in July 2012 by letter that she could reapply in January 2013. J. Ex. 14. To date, Plaintiff has not reapplied to the list. Butler Dep. 114:9-115:2.

There is no written policy for removal from the list. Edwards-Brown Dep. 57:20-22. December 3, 2013. It is within Defendant Edwards-Brown's authority to remove people from the list. Dwyer Dep. 21:22-25, December 3, 2013. Neither Defendant actually saw the Facebook post in question. Edwards-Brown Dep. 22:24-23:17; Dwyer Dep. 8:3-16. Instead, the post was brought to Defendant Edwards-Brown's attention by one of the court employees who was tagged in the post, Katherine Streeter. Edwards-Brown Dep. 22:9-11. Defendants took Ms. Streeter at her word regarding the content of the post. Edwards-Brown Dep. 37:18-19; Dwyer Dep. 9:25-11:8.

Plaintiff was not subject to any formal disciplinary action under the Michigan Rules of Professional Conduct. Compl. ¶ 15.

---

[1]Facebook is a social media website where members post comments, pictures, etc.

[2]Depending on an individual member's privacy settings, a posted comment may be visible to the general public, a single individual selected by the member, or a variety of sizes of target audiences between those two extremes.

Ct. Order, Dec. 23, 2013 at 1-3 (Dkt. 23).

As noted above, the Facebook post's exact language has not been produced by either party. The new evidence that Defendants have offered is the court order creating the attorney assignment list, and the administrative policy written to implement the order. The administrative policy is silent as to removal, and the court order, known as LAO No. 2008-01, simply states that "[a]ttorneys may be removed from the Attorney Assignment List by the Chief Judge Pro Tempore or by the Judge of record who appointed the attorney to represent the indigent party, for failure to perform his/her responsibilities as an attorney."

The court order creating the list also contains a section titled "Compensation Method" which details the process that attorneys receiving work from the Attorney Assignment List must follow in order to be compensated for their work. It is not clear if the compensation comes from the court itself, Washtenaw County, or another state entity.

Also of note, Defendant's have produced several emails indicating instances of attorneys being removed from the list - or having removal threatened - over the years.

## II. ANALYSIS

### A. The Standard on Motion for Summary Judgment

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the

non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Additionally, the moving party need not produce admissible evidence showing the absence of a genuine issue of material fact when the non-moving party has the burden of proof, but may discharge its burden simply by pointing out that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

### B. Defendants' Motion for Summary Judgment Is Granted in Part and Denied in Part

Plaintiff makes two arguments that bear more on the framework of the analysis called for in this case than the substantive law. Neither argument has persuaded the Court.

First, Plaintiff argues that because Defendants have raised the issue of immunity, that the proper context of this lawsuit is the "exercise of sovereign power" as opposed to the "government-as-employer" context. This forced dichotomy is unavailing. Governments are indisputably "sovereign" entities, but they often enter into contracts and relationships that are governed by various bodies of law, and those two sets of facts must exist side-by-side. There is no reason, and Plaintiff points to no authority to suggest, that a government employer's role as a sovereign potentially entitled to one form of immunity or another and

its role as an employer whose actions may result in liability cannot coexist simultaneously. That is, whether immunity applies in a given scenario needs to be addressed first, and then if immunity is not available, the employment-style analysis can be used to assess liability. Regardless of what authority, sovereign or otherwise, the probate court used to create and administer the assignment list, Plaintiff's status as an attorney on the list made her an independent contractor for the court.

Second, Plaintiff argues that she is a private attorney and using the employment/independent contractor analysis is inappropriate. The very heart of this case, however, is the fact that Plaintiff's ability to work as an independent contractor for the Washtenaw Courts was temporarily revoked. Indeed, strengthening the argument that Plaintiff was an independent contractor, LAO No. 2008-01 lays out the procedure for receiving compensation for work received by way of the assignment list. Moreover, the label of "independent contractor" is simply one of many that Plaintiff may have had at the time of her termination from the list. There is no reason that she could not simultaneously be on the list as an independent contractor and soliciting other clients as a private attorney. One does not take away from the other. In short, as long as Plaintiff was on that list, she could fairly be considered an independent government contractor, whether or not at any given time, she was working specifically on a case from the list.

Furthermore, Plaintiff's argument would dismantle the entire *Garcetti* framework for analyzing alleged First Amendment violations in the public employment context because as soon as a court determines that an individual plaintiff was speaking as a private citizen - the first step in the *Garcetti* analysis - Plaintiff would have the whole process derailed because since a finding of "private citizen" has been made, a public employment analysis

5

is not needed. The Court is not convinced that the seeds for undoing the precedent set by *Garcietti* were sown so close to the surface.

### 1. Defendants are not entitled to quasi-judicial immunity

Defendants raise the issue of quasi-judicial absolute immunity, arguing that because the appointment of attorneys is an inherently judicial act, that the maintenance of an attorney appointment list is so intertwined with that act that the administrators of the list should be protected by the same immunity given judges performing their judicial duties. Plaintiff disagrees, and argues against a grant of immunity for various reasons. It is, however, the case that Defendants rely on that ultimately works against it.

As the Sixth Circuit has not ruled specifically on whether the administrators of an attorney assignment list are entitled to quasi-judicial immunity, Defendants provided a case from the Fifth Circuit, *Davis v. Tarrant County, Texas et al*, 565 F.3d 214 (5th Cir. 2009), wherein the court found that the administration of an attorney assignment list is inextricably tied to the judicial act of appointing an attorney in a given case. The *Davis* court, however, did not reach its decision until after engaging in a thorough analysis of the Second Circuit's opinion in a substantially similar case, and deciding to go the other way. Specifically, the *Davis* court split from the Second Circuit's decision in *Mitchell v. Fishbein et al*, 377 F.3d 157 (2d Cir.2004), which found that the maintenance of a list of attorneys qualified to represent indigent criminal defendants was ministerial in nature. The *Mitchell* court reached its decision, in part, based on the reasoning found in *Ex parte Virginia*, 100 U.S. (10 Otto) 339, 348 (1879), which found that a judge did not have judicial immunity for his acts related to the maintenance of juror rolls because that task "might as well have been committed to a private person."

Here, the Court finds the Second Circuit's reasoning more persuasive than the Fifth's. In this case, Plaintiff's removal from the list was purely administrative and, indeed, while the administration of the list is carried out by two judicially appointed court employees, there is no reason to think that the administration of the list could not be farmed out to a completely private person, it is a purely ministerial act. Certainly, were a judge to remove an attorney from the list for cause as outlined in Defendants' policy document, that Judge would have immunity for that act, however, the administrative removal of an individual, while permitted, does not come cloaked with the protections of a judicial act.

The Court, therefore, DENIES Defendants' motion for summary judgment on the issue of quasi-judicial immunity.

### 2. Defendants are not entitled to qualified immunity

Defendants invoke qualified immunity, and argue that as governmental actors, they are shielded from liability because Plaintiff has not demonstrated a set of facts that can prove Defendants violated the First and/or the Fourteenth Amendment. Further, Defendants argue that even if Plaintiff could show such facts, that those facts are insufficient to demonstrate "objectively unreasonable" conduct in light of the substantive constitutional law at the time of the incident in question.

Once qualified immunity is invoked, the burden shifts to the plaintiff to demonstrate that the defense is not applicable. *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006). Plaintiff, however, has chosen to address the issue with a cursory and conclusory argument that there is no merit to the claim of immunity because it is well-established that retaliatory administrative acts for the exercise of First Amendment rights are clearly unconstitutional.

Nevertheless, for the reasons stated below, the Court finds that Defendants are not entitled to qualified immunity.

In order to determine whether or not qualified immunity applies in a given case, a court must employ a two-part test, however, the reviewing court has discretion to begin its inquiry with either part of the test. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, the Court will employ the traditional sequence, and first determine whether, based on the applicable law, and in the light most favorable to Plaintiff, the facts show that a constitutional violation has occurred. Then, if the Court determines that in the light most favorable to Plaintiff, a violation occurred, the Court will consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known.

Here, taking the facts in a light most favorable to her, Plaintiff, speaking as a private individual, made a critical statement regarding the efficiency of Defendants' court operations, which is a matter of public concern, and as a result, Plaintiff was punished by Defendants in that she was taken off of the attorney assignment list, effectively terminating her status as an independent contractor. When viewed in such a light, with the favorable assumptions allowed by the qualified immunity analysis, the Court concludes that a constitutional violation occurred.

The next step is to determine whether the constitutional right was clearly established at the time of the violation such that a reasonable person would know that the act was inappropriate. The Court finds that, given over 200 years of First Amendment jurisprudence and the huge premium that popular culture puts on the freedom of speech, a reasonable person would have known that a governmental entity should, at the very least, proceed with

extreme caution when considering whether or not to take an adverse employment action against someone based on something they said.

As a result of the foregoing analysis, the Court concludes that Defendants are not entitled to qualified immunity.

> **3. The Court grants Defendant's motion for summary judgment on the Unconstitutional Condition claim and the Due Process Claim**
>
> **a. There is no unconstitutional condition**

Plaintiff's attempt to create a situation where the unconstitutional conditions doctrine is applicable are unavailing. As noted in the Court's December 23, 2013 Order, the unconstitutional conditions doctrine is relevant in cases where the government is requiring certain speech in order for someone to receive a benefit, like continued government employment. *See,* Dkt. 23 at 11. Plaintiff categorizes this as too narrow a view of the doctrine. The Court disagrees, particularly in light of the Supreme Court's ruling in *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 716-19 (1996), which specifically drew a line between First Amendment retaliation and unconstitutional conditions claims. If Plaintiff is claiming that she has been subjected to an unconstitutional condition in order to regain access to the assignment list the facts do not support such a claim. Indeed, there is no evidence on the record that Plaintiff has been asked to perform anything that could be construed as speech in order to regain access to the list. As a matter of fact, Defendants have not even asked for an apology, instead, they simply said that Plaintiff could re-apply to the list several months after her removal. The Court notes that Plaintiff has not reapplied.

In light of the complete lack of evidence supporting an unconstitutional conditions claim, the Court GRANTS Defendants' motion on this issue.

### b. Plaintiff has not been deprived of a cognizable property interest such that her Due Process rights have been implicated

Plaintiff argues that because LAO No. 2008-01 grants to judges the authority to remove attorneys from the list, that Defendants' actions were taken in contravention of that policy and therefore, violates Plaintiff's due process rights. Setting aside for the moment the fact that Plaintiff has not demonstrated the loss of a property interest sufficient to state a Due Process claim, her reading of LAO No. 2008-01 is too limited. That is, the language makes clear that a judge may remove an attorney for a failure to execute his or her duties. It is silent as to removal for other reasons and by other parties. However, implicit in the system, given the requirements of insurance and in-county residence or office, is the assumption that an attorney may cease to be eligible for the list at any time, should he or she move or have a lapse in insurance coverage, to give two mundane examples. That attorney must be removed, but removal under the language of LAO No. 2008-01 would be inappropriate, and so there must be another mechanism for removal. Indeed, Defendants have submitted evidence of other administrative removals. *See* Edwards-Brown Dep., Dec. 3, 2013, Dep. Exh. 16. While it is true that Plaintiff's removal falls somewhere in between a purely administrative removal and a judicially executed, for cause removal, that does not make her removal clearly prohibited by the policy.

In any event, as with the Constitutional Conditions claim, Plaintiff has not pointed to any evidence that she has suffered the loss of a property interest such that a claim under the Due Process Clause may be had. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (noting that a procedural due process claim, requires a plaintiff to show that "(1) [s]he had a life, liberty, or property interest protected by the Due Process Clause;

10

(2) [s]he was deprived of this protected interest; and (3) the state did not afford [her] adequate procedural rights prior to depriving [her] of the property interest."). Plaintiff's complaint focuses on a loss in her law license, but it is uncontraverted that Plaintiff's law license is still in good standing. There is no reason to believe that Plaintiff is not free to walk into the Washtenaw County Probate Court today and advocate for her clients as a licensed attorney.

Defendant's motion for summary judgment, therefore, is GRANTED on the issue of Plaintiff's Due Process claim.

### 4. Defendants have not shown the absence of a genuine issue of material fact with regard to Plaintiff's First Amendment retaliation claim

As the Court set forth in its December 23, 2013 Order:

[t]he Supreme Court thoroughly analyzed the scope of the First Amendment's protections for public employees in *Garcetti v. Ceballos*, 547, U.S. 410. The *Garcetti* court added another dimension to the *Pickering* rule that the First Amendment only protects the public employee who is speaking as a citizen addressing matters of public concern. Crucial to the analysis, the *Garcetti* court held, is whether the speech at issue was made pursuant to the employee's official duties. Specifically, the Court held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.

#### a. Plaintiff was speaking as a private citizen

Seeing as no new evidence has been produced with regard to the Facebook post that set the fire the Court is currently tending to, the Court hereby incorporates its analysis and findings of December 23, 2013 with regard to Plaintiff's speech as being that of a private citizen. That is, the Court finds that while Plaintiff was an independent government contractor by virtue of her presence on the list, her comment on Facebook was not made

pursuant to her official duties, and that Plaintiff was therefore speaking "as a citizen." The next step is to determine whether that speech touched on a matter of public concern.

### b. Viewed in the light most favorable to Plaintiff, the evidence suggests that she was speaking on a matter of public concern

First, the Court notes that contrary to Plaintiff's assertions, the specific content of the Facebook post is not in the record, as Plaintiff herself deleted the post and has not found a way to retrieve it. What the record contains are half-recollected summaries of the specific language of the post and vague generalizations of its meaning. As the non-movant, Plaintiff is entitled to certain inferences, and on this issue, as noted above in the Court's discussion on qualified immunity, Plaintiff benefits from those inferences, despite the absence of the specific content of the post.

The Sixth Circuit's decision in *Van Compernolle v. City of Zeeland*, 241 F. App'x 244 (6th Cir. 2007) encapsulated a district court's duty when making a determination on whether or not a plaintiff spoke on a matter of public concern. Specifically:

> [t]he threshold issue is whether the employee's speech addressed a matter of public concern, which is a matter of law for the court to decide. If the employee's speech does not address a matter of public concern...the employee's claim must fail. Matters of public concern are those that can "be fairly considered as relating to any matter of political, social, or other concern to the community. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. This Court has stated that speech is of 'public concern' if it involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government. Such matters of public concern are to be contrasted with internal personnel disputes or complaints about an employer's performance....More significant than why the employee spoke is what the employee intended to communicate by speaking. Based on these principles we must examine: the focus of the speech; the point of the speech in question; to what purpose the employee spoke; the intent of the speech; or the communicative purpose of the speaker. Finally, as a "corollary" to the focus test, the proper inquiry is not what might be

> "incidentally conveyed" by the speech, and that "passing" or "fleeting" references to an arguably public matter do not elevate the speech to a matter of "public concern" where the "focus" or "point" of the speech advances only a private interest.

*Id.,* 241 F. App'x at 249 (internal quotations and citations omitted).

When confronted with this issue on Plaintiff's motion for a preliminary injunction, the Court found that without the specific language of the Facebook post it could not engage in a meaningful analysis of type laid out in *Van Compernolle*. While it is true that the Court is still at a loss without the specific language, as noted above, the inferences available in the favor of the non-movant on a motion for summary judgment free the Court to come to a conclusion that, in the light most favorable to her, Plaintiff was speaking on a matter of public concern.

Starting with the warning at the end of the above quoted passage from *Van Compernolle,* the Court reviews the parties' claims with regard to the content, form, and context of Plaintiff's speech taking care not to "elevate the speech to a matter of 'public concern' where the 'focus' or 'point' of the speech advances only a private interest."

Here, the parties agree that the post was made on Plaintiff's personal Facebook page. Further, they agree that two court employees were "tagged" in the post and that those employees took personal offense to the message conveyed. The parties also agree that the post generally implicated the efficiency of the court clerk's office, specifically with regard to two cases that Plaintiff was handling.

It is that last factor that tips the scale in Plaintiff's favor on this issue. If there was more evidence that suggested Plaintiff's complaint was a personal attack against the two tagged individuals, with only a passing reference to the inefficiency or incompetence of the

court, she may have had her speech categorized as advancing only a private interest. Plaintiff, however, was complaining about cases being handled poorly, and, suggested that things may be changing for the better. Defendants make much of the limited audience of the speech. While that does go to the context of the speech, it is not determinative. As noted above the Court must pay attention to the "focus of the speech; the point of the speech in question; to what purpose the employee spoke; the intent of the speech; or the communicative purpose of the speaker." Here, the focus of the speech - the functioning of the clerks office - could easily have been the topic of an opinion piece in a local legal newspaper. Instead it was given a much shorter treatment and made available to only a handful of people. That does not change the fact that, in the light most favorable to Plaintiff, the focus of the speech was a form of governmental operations, and therefore touched on a matter of public concern.

### c. Plaintiff's interest in her First Amendment rights outweigh Defendants' interests in this case

In light of the Court's determination that, viewed in the light most favorable to Plaintiff, she was speaking "as a citizen on a matter of public concern," the next step in the inquiry is to determine ""whether [Defendants] had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti,* 547 U.S. at 418.

The evidence before the Court does not support a finding that Defendants were justified in their actions. Although the Court does not doubt Defendants' claims that the employees tagged in Plaintiff's facebook post were genuinely upset by the post, that is not sufficient to support a conclusion that the post caused a disruption of Defendants'

workplace. There is no evidence before the Court that shows work was actually delayed or disrupted on account of the post. Furthermore, even if there was a mild disruption of work, Plaintiff's exercise of her First Amendment rights carrys more weight in this analysis than the temporary delay of work in a office because of hurt feelings and indignation. Plaintiff did not call in a bomb threat and halt all courthouse operations for a day; she posted a critical message on Facebook. To give more weight to whatever mild ripples in the Defendants' workplace that post may have caused than to Plaintiff's First Amendment rights would fly in the face of the United States Constitution.

In light of the above, because, when viewed in a light most favorable to Plaintiff, the evidence creates the inference that she was speaking on a matter of public concern and her interests outweigh those of Defendant on the issue, under the Supreme Court's ruling in *Garcetti*, the Court hereby DENIES Defendants' motion on the issue of First Amendment retaliation.

### C. Plaintiff's Motion For Leave to Amend is Denied as Prejudicial and Futile

Less than a week before the day set for the hearing on Defendant's motion for summary judgment, Plaintiff filed a motion for leave to amend seeking to add three new claims. Specifically, Plaintiff seeks to add a "class of one" equal protection claim, a claim for the violation of her constitutional right to petition the government, and a claim of unlawful patronage in violation of the First Amendment.

Federal Rule of Civil Procedure 15(a) provides that, after the initial window for amending pleadings as a matter of course has closed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2) (West 2013). In *Foman v.*

*Davis*, 371 U.S. 178, 182 (1962), the Supreme Court put its gloss on Rule 15's grant of discretion, laying out a set of factors a court should consider when deciding whether or not to grant leave to amend. Specifically, the *Foman* Court stated:

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.'

*Id.* at 182.

Here, it appears to the Court that granting Plaintiff's motion would unduly prejudice Defendants. The motion to amend was filed less than a week before the hearing on Defendant's motion for summary judgment. The motion for summary judgment was fully briefed and Defendants' cousnel was prepared for oral argument, which involves no small amount of preparation and cost. Were the Court to grant Plaintiff's motion, Defendants would be forced to duplicate that effort for the new claims. Additionally, nothing in the record suggests that Plaintiff could not have filed this motion months ago, thereby allowing Defendants the opportunity to assess the new claims and make an informed decision on how to proceed. Plaintiff offers no reason for the delay.

Additionally, Plaintiff's new claims are futile. Where a proposed amendment "is clearly frivolous or advances a claim or defense that is legally insufficient on its face" a court is free to deny leave to amend a complaint or answer on futility grounds. *Iron Workers' Local No. 25 Pension Fund v. Klassic Services,* Inc., 913 F. Supp. 541 (E.D. Mich. 1996); *and see, Miller v. Calhoun* Cty., 408 F.3d 803, 817 (6th Cir. 2005).

As to Plaintiff's claim for violation of her right to petition, the allegations are plainly contradictory to the facts before the Court. That is, Defendants have not said that they would not reinstate Plaintiff to the list because of this lawsuit, they said that they would have to look at the situation because they are not sure how to proceed. Moreover, the issue is not ripe, as Plaintiff has not reapplied to be on the list, and until she does - and is then denied based on the fact that she sued Defendants - Plaintiff's right to petition claim fails as a matter of law.

Plaintiff's unlawful patronage claim is futile in that the facts and allegations of this case, surrounding as they do a Facebook post regarding courthouse efficiency, have nothing to do with political patronage or political speech. It is not alleged anywhere in the record that Defendants removed Plaintiff from the list because of her political beliefs or associations. Plaintiff's statement on Facebook has not been alleged to have contained any political overtones of any sort. While the issue of political patronage is a serious concern, the facts and allegations of this case are not such that Plaintiff has a claim for relief on this point.

Finally, Plaintiff's "class of one" equal protection claim fails as a matter of law as well. The Supreme Court has noted that its "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Here, there are no allegations that Defendants have tolerated critical Facebook posts - or any other form of criticism for that matter - from other assignment list attorneys,

17

and as such, there is no yardstick by which to measure Defendants' treatment of Plaintiff viz a viz "others similarly situated."

The Court finds, therefore, that granting Plaintiff's motion would unduly prejudice Defendants and that the proposed amendments are futile, and hereby DENIES Plaintiff's motion for leave to amend the complaint.

### III. CONCLUSION

For the reasons set forth above, the Court DENIES Defendants' motion with regard to quaisi-judicial, qualified immunity, and First Amendment retaliation, and GRANTS Defendants' motion on Plaintiff's claims for Due Process violations and unconstitutional conditions, and hereby DISMISSES those claims from the case. Furthermore, the Court DENIES Plaintiff's motion for leave to amend the complaint.

SO ORDERED.

                s/Nancy G. Edmunds
                Nancy G. Edmunds
                United States District Judge

Dated: May 5, 2014


### CERTIFICATION

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 5, 2014, by electronic and/or ordinary mail.

                s/Carol J. Bethel
                Case Manager